# Johnson *versus* The Hoosier Drill Company.

A. entered into articles of agreement with B. whereby he was constituted the agent for the sale of certain drills manufactured by B. in a specified district. He agreed to canvass the region thoroughly, guarantee all sales of drills, take written orders from all purchasers and to sell no other drill than those of B.'s manufacture. In pursuance of this contract A. did canvass the region and effected sales of twenty drills, for which, however, he failed to take written orders from the purchasers. B. was able to furnish only five of the drills so sold, and wrote to A. apologizing for his failure to forward the other fifteen and assigning as his reason the fact that he was unable to manufacture the drills speedily enough to meet the demand. Subsequently, in an action by B. against A. to recover the value of the five drills delivered, defendant set up as a defence the damages sustained by him by reason of the plaintiff's failure to deliver the other fifteen. *Held*, that he was entitled to avail himself of that defence.

November 17th 1881. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

ERROR to the Court of Common Pleas of *Fayette county:* Of October and November Term 1881, No. 204.

Debt, by the Hoosier Drill Company against John C. Johnson to recover the price of five drills sold by defendant as their agent.

On the trial, before WILLSON, P. J., the following facts appeared. On December 13th 1878, plaintiff entered into articles of agreement with defendant, whereby the latter was constituted plaintiff's sole agent for the sale of the agricultural implements made by them in certain townships of Fayette county. These articles contained, inter alia, the following clauses:

[Johnson v. Hoosier Drill Co.]

" In consideration of the said agency the said J. C. Johnson & Co. hereby agrees to make every reasonable effort to sell as many of said implements in said territory as the trade therein will demand, by thoroughly and diligently canvassing the territory herein mentioned, during the season, and also agrees to guarantee the sale of all the following described implements and all others ordered by them during the season, and further agrees not to sell (directly or indirectly) any other grain drill except the Hoosier while this agency exists. . . . The said party of the second part (J. C. Johnson & Co.) further agrees to indorse and guarantee payment of all notes taken in payment for said implements, and be ready for final settlement by the first day of October 1879, and the said party of the second part also further agrees to take a written order for every drill sold by them."

The evidence showed that in pursuance of these articles defendant diligently canvassed the district for about two months, employing during a portion of that time an assistant, and that he had expended a considerable sum of money in prosecuting said canvass. He succeeded in selling a number of plaintiff's implements, among others twenty drills, for which, however, he did not take written orders from the purchasers. He at once requested plaintiff to forward the twenty drills for delivery. Plaintiff was, however, unable to furnish more than five of said drills, and wrote to defendant as follows, on September 30th 1879:

"Mr. John C. Johnson, *Uniontown, Pa.—Dr. Sr. :*—In answer to yours of 26th inst., in regard to an allowance account not filling your orders, have to say that it was not from lack of any desire on our part, but was because we were entirely unable to fill your orders at time received. It was not in our power to meet the demand in full for our drills this season. We did all that could be done, but the odds were too heavy against us. You no doubt feel very bad because you did not get drills to fill your orders, and we can assure you that we feel very bad about it. At time your order was received, we had many unfilled orders ahead that were received long before yours, that were justly entitled to precedence. We will also direct your attention to the fact that we supplied you with all the drills you bought. It being from lack of ability and not from lack of desire that we did not supply you, or, in other words, it not being in our power to do it, we will suffer unjustly by allowing any commissions or by payment for time account of your unfilled orders. As a reasonable and just man, we are sure you will not press a claim that is not sustained by justice. If you will reconsider the matter in the light of reason, we are sure you

will see the wrong that we would sustain by allowing a claim of this kind, and we cannot believe you want us to suffer unjustly.
      " Respectfully,          Hoosier Drill Co."

Subsequently, defendant declining to account to plaintiff for the price of the five drills which had been furnished, plaintiff brought this suit.

Defendant requested the court to charge :

That if the defendant, under the contract of December 13th 1878, performed services, and made sales of drills, &c., which he was authorized to sell, and ordered the same from the company, and the company failed or refused to furnish the drills so sold and ordered, the defendant may set off against plaintiff's claim the value of his services in making such sales, or the amount he would have realized by said sales if the drills had been furnished. *Refused.*

The court charged, inter alia, as follows : " While we think there is merit in the defence set up by Mr. Johnson, in regard to his having employed his time in endeavoring to make sales of these implements, yet at present, under our impression of the construction to be put upon the contract, we think he cannot avail himself of it as a defence to the claim that this suit is brought to recover, and we therefore have to instruct you that the plaintiff is entitled to recover the price of the four plain drills and the one drill with fertilizing attachment, amounting to $282.50, with interest."

Verdict and judgment for the plaintiff, accordingly, in the sum of $305.10.  Defendant, thereupon, took this writ of error, assigning for error the answer of the court to his point, and the portion of the charge above cited.

*Boyle* and *Mestrezat,* for the plaintiff in error, cited Shaw *v.* Badger, 12 S. & R. 275 ; Hubler *v.* Tamney, 5 Watts 51 ; Hunt *v.* Gilmore, 9 P. F. Smith 450 ; Patterson *v.* Hulings, 10 Barr 508.

*W. H. Playford,* for the defendant in error.

Mr. Justice Paxson delivered the opinion of the court, January 3d 1882.

The Hoosier Drill Company, plaintiffs below, appointed the defendant their agent to make sale of their agricultural implements in certain townships of Fayette county.  The article of agreement between the parties, after having in express terms created such agency, contains this further provision : " In consideration of the said agency, the said J. C. Johnson & Co. hereby agrees to make every reasonable effort to sell as many of

[Johnson v. Hoosier Drill Co.]

said implements, in said territory, as the trade therein will demand, by thoroughly and diligently canvassing the territory herein mentioned during the season, and also agrees to guarantee the sale of all the following described implements, and all others ordered by them during the season, and further agrees not to sell (directly or indirectly) any other grain drill, except the Hoosier, while this agency exists."

The evidence, on the part of the defendant, shows that he was engaged for about two months in canvassing the district, a portion of the time with an assistant, and expended a considerable amount of money in prosecuting said canvass. He succeeded in making sales of a number of plaintiff's articles, among others, upwards of twenty drills. He was able to deliver only five drills, the plaintiffs having declined to furnish more, upon the ground of their inability to do so, the demand for their implements having greatly exceeded the capacity of their works. The plaintiffs having brought suit to recover the value of the five drills delivered, the defendant attempted to set off, by way of defence, the damages sustained by him by reason of plaintiff's refusal to deliver the drills as ordered. By the defendant's point the learned judge was requested to instruct the jury : " That if defendant, under the contract of December 13th 1878, performed services, and made sales of drills, &c., which he was authorized to sell, and ordered the same from the company, and the company refused, or failed, to furnish the drills, &c., so sold and ordered, the defendant may set off against plaintiff's claim the value of his services in making such sales, or the amount he would have realized by said sales if the drills had been furnished."

This instruction was refused, the learned judge conceding the merit of the defence, yet holding under the language of the contract the defendant could not avail himself of it, and gave the jury a binding instruction to find for the plaintiffs.

No reason was given for this ruling. In the argument at bar, however, the learned counsel for the plaintiffs relied principally upon the following : 1st. That the defendant had not taken written orders from the purchasers as required by the agreement ; and 2d. That the company did not agree to furnish the drills.

It is sufficient to say, in regard to the first proposition, that the company did not decline to furnish the drills because the defendant did not send written orders from the purchasers. On the contrary, it distinctly appears from the plaintiff's letters of August 25th and September 30th 1879, that the refusal was " not from any lack of desire on our part, but because we were entirely unable to fill your orders at time received. It was not in our power to meet the demand in full for our drills this

season." The reason now set up, that the orders were not in writing, is manifestly an after-thought, and an attempt to avoid the consequences of their failure to deliver the drills.

An agreement to deliver such implements as the defendant should succeed in selling is necessarily implied from the express terms of the contract. The defendant was not only authorized to sell, but he was required to exert himself to do so. He was to canvass the territory specified in the agreement, and he was, moreover, bound not to sell any other grain drill than the one made by plaintiffs. Where an agent sells an article with the authority of the principal, I know of no rule of law which would justify a refusal to deliver it on the part of such principal, and, at the same time, deny all compensation for the breach.

The defendant's point should have been affirmed. The right, under our defalcation act, to set off the damages arising from such breach of contract, has been settled by Shaw *v.* Badger, 12 S. & R. 275 ; Huber *v.* Tamney, 5 Watts, 51 ; Patterson *v.* Hulings, 10 Barr 506 ; Hunt *v.* Gilmore, 9 P. F. S. 450, and numerous later cases.

The judgment is reversed, and a venire facias de novo awarded.